# EXHIBIT A

Case Number: CACE-22-004614 Division: 05

Filing # 146746873 E-Filed 03/30/2022 04:42:21 PM

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>  JUDICIAL CIRCUIT, IN AND FOR <u>BROWARD</u>  COUNTY, FLORIDA

<u>Nicola Berry</u>
Plaintiff

Case # _____

Judge _____

vs.

<u>TD Bank, N.A.</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 03/30/2022 04:42:19 PM.****

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   3

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☒ yes
    ☐ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Angelica Gentile Gentile      Fla. Bar # 102630
    Attorney or party              (Bar # if attorney)

Angelica Gentile Gentile            03/30/2022
 (type or print name)          Date

Case Number: CACE-22-004614 Division: 05
Filing # 146746873 E-Filed 03/30/2022 04:42:21 PM

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

| | |
|---|---|
| **NICOLA BERRY**, individually, and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **TD BANK, N.A.,** | |
| Defendant. | |

Plaintiff Nicola Berry, individually and on behalf of all others similarly situated, hereby

brings this Class Action Complaint against Defendant TD Bank, N.A. ("TD Bank") and alleges as

follows:

## INTRODUCTION

1.     This lawsuit is brought as a class action on behalf of Plaintiff and thousands of

similarly situated customers of TD Bank who have signed up for the Zelle money transfer service

and who: have been the victim of fraud on the Zelle service; who have incurred losses due to that

fraud that have not been reimbursed by TD Bank; and who were entitled by the marketing

representations of TD Bank regarding the Zelle service and by the TD Bank's contract promises

to a full reimbursement of losses caused by fraud on the Zelle service.

2.     Zelle is a payment transfer service wholly owned and operated by seven of the

largest banks in the U.S.

3.     There are approximately 1,500 member banks and credit unions who participate in

the Zelle service. Those members engage in their own significant marketing efforts to encourage

their accountholders to sign up for the Zelle service by marketing Zelle as a fast, safe and secure

way for consumers to send money. This is false. In fact, there are huge, undisclosed security risks

of using the service that TD Bank omitted from its marketing push to get its accountholders to sign up for Zelle.

4.      TD Bank prominently touts Zelle to its accountholders as a secure, free and convenient was to make money transfers. However, it misrepresents and omits a key fact about the service that is unknown to accountholders:  that there is virtually no recourse for consumers to recoup losses due to fraud.  Indeed, <u>unlike</u> virtually every other payment method commonly used by American consumers—debit cards, credit cards, and checks—there is a no protection for accountholders who are victims of fraud, and virtually no recourse for accountholders attempting to recoup losses due to fraud.

5.      The unique, misrepresented, and undisclosed architecture of the Zelle payment system means—again, unlike other payment options commonly used by American consumers—that virtually any money transferred for any reason via Zelle is gone forever, without recourse, reimbursement or protection.

6.      Worse, TD Bank misrepresents and omits the truth about a secret policy it has adopted:  it does not and will not reimburse its accountholders for losses via Zelle due to fraud, even where those losses are timely reported by accountholders.

7.      TD was required not to misrepresent the unique and dangerous features of the Zelle service in its marketing about it and in contractual representations.  But it failed to do so.

8.      As a result, users like Plaintiff sign up for and use the Zelle service without the benefit of accurate information regarding that service, and later end up with huge, unreimbursed losses due to fraud.  Such users never would have signed up for Zelle in the first place if they had known the extreme risks of signing up for and using the service.

9.     As a member of the Zelle network, the risks are well known to TD Bank but are omitted from all of its marketing regarding Zelle.

10.     As a recent New York Times investigation showed, fraud on the Zelle network is a widespread scourge of which bank is well aware. Quoting an industry expert, the *Times* reported:

> "Organized crime is rampant," said John Buzzard, Javelin's lead fraud analyst. "A couple years ago, we were just starting to talk about it" on apps like Zelle and Venmo, Mr. Buzzard said. "Now, it's common and everywhere."
>
> The banks are aware of the widespread fraud on Zelle. When Mr. Faunce called [his bank] to report the crime, the customer service representative told him, "A lot of people are getting scammed on Zelle this way." Getting ripped off for $500 was "actually really good," Mr. Faunce said the rep told him, because "many people were getting hit for thousands of dollars."

https://www.nytimes.com/2022/03/06/business/payments-fraud-zelle-banks.html (last accessed March 28, 2022).

11.     Had Plaintiff and the Class members known of the true operation and risks of the Zelle service—risks TD Bank alone was aware of and actively misrepresented—they would not have signed up for and used the Zelle service.

12.     Plaintiff and the Class members have been injured by signing up for and using the Zelle service. Plaintiff brings this action on behalf of herself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Zelle and member banks from continuing to engage in its illegal practices as described herein.

## PARTIES

13.     Plaintiff Nicola Berry is a citizen and resident of Broward County, Florida.

14.     Defendant TD Bank, N.A., is a federally chartered bank with its principal place of business in Cherry Hill, New Jersey.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $30,000 exclusive of interest, costs, and attorney's fees.

16.     Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant is authorized to do business in the State of Florida and maintains a network of retail branches doing business in Florida that operates, conducts, engages in, and/or carries on business and business activities in Florida and engages in substantial and not isolated activity in Florida.

17.     Venue for this action is proper in this Court pursuant to Fla. Stat. §47.011 and §47.051 because Defendant has an agent or other representative and a substantial part of the events and omissions giving rise to this action occurred in Broward County, Florida.

## FACTUAL ALLEGATIONS

### A.     Overview

18.     It is free to sign up with Zelle, and in fact Zelle is integrated into the websites and mobile apps of TD Bank.  In marketing and within the website and app itself, TD Bank encourages its accountholders to sign up for the Zelle service—a sign up that occurs quickly within the TD Bank website or mobile app.  During that sign-up process, a user provides basic information to Zelle to link into the Zelle network.

19.     While Zelle provides a link to what it calls a "User Agreement" on its website, at no time during the sign-up process on the bank's website or app did Plaintiff agree to be bound by that document.

20.     Sign up for the Zelle service allows the fast transfer of account funds to other Zelle users.

21.     Created in 2017 by the largest banks in the U.S. to enable instant digital money transfers, Zelle is by far the country's most widely used money transfer service. Last year, people sent $490 billion in immediate payment transfers through Zelle.

22.     The Zelle network is operated by Early Warning Services, a company created and owned by seven banks: Bank of America, Capital One, JPMorgan Chase, PNC, Truist, U.S. Bank and Wells Fargo.

23.     The Zelle service is very popular, but it also has a massive fraud problem—in no small part because of the immediacy with which money transfers are made on the service. If a fraudster removes money from a Zelle user's bank account, either directly or by fooling the Zelle user to transfer money, those funds are unrecoverable to the consumer.

24.     Nearly 18 million Americans were defrauded through scams involving person-to-person payment apps like Zelle in 2020 alone, according to Javelin Strategy & Research, an industry consultant.

25.     Organized crime is rampant on Zelle and other similar person-to-person transfer services.

26.     The 1,500 banks and credit unions who are members of the Zelle network, including TD Bank, know full well that they have a widespread fraud problem on their hands, but have misrepresented and failed to take steps to warn their accountholders of these risks—or protect their accountholders who fall prey to fraud.

27.     For example, a common scam involves a scammer impersonating a bank employee and requesting that the accountholder transfer money to a different bank account for testing

purposes. Unsuspecting Zelle users, tricked into making a fraudulent transfer, in many cases send hundreds or thousands of dollars to fraudsters.

28.     In another very common scheme, a Zelle user's phone is stolen and Zelle transfers are made from the stolen phone to the fraudster.

29.     In short, and unbeknownst to average Zelle users, the Zelle network has become a preferred tool for fraudsters like romance scammers, cryptocurrency con artists and those who use social media sites to advertise fake concert tickets and purebred puppies.

30.     Scams like these are rampant on the Zelle network precisely because of the design and architecture of the network, specifically that money transfer is instantaneous and unrecoverable. Indeed, there is virtually no recourse for consumers to recoup losses due to fraud, unlike other payment methods commonly used by American consumers—debit cards, credit cards, and checks. Zelle provides no protection for accountholders who are victims of fraud, and TD Bank provides virtually no recourse for accountholders attempting to recoup losses due to fraud.

31.     The unique, misrepresented, and undisclosed architecture of the Zelle payment system and TD Bank's own fraud policies means—again, unlike other payment options commonly used by American consumers—that virtually any money transferred for any reason via Zelle is gone forever, without recourse, reimbursement or protection for victimized accountholders.

**B.     TD Bank Falsely Markets Zelle as a Safe and Secure Way to Transfer Money,  Omits Information Regarding the Extreme Risks of Signing Up for and Using the Service, and Misrepresents Fraud Protections Regarding Zelle in its Account Contract**

32.     In its marketing about Zelle and during the Zelle signup process within the Bank's mobile app or website, the Bank makes repeated promises that Zelle is a "fast, **safe** and easy way to send and receive money" (emphasis added).

33.     It also promises: "Move money in the moment.  It's simple and **secure** – with lots of people you know" (emphasis added),

34.     At no time in its marketing or during the sign-up process does TD Bank warn potential users of the true security risks of using the Zelle service—including the risk of fraud and the risk that fraudulent losses will never be reimbursed by TD Bank.

35.     Zelle's services can cause unsuspecting consumers like Plaintiff to incur massive losses on their linked bank accounts.

36.     TD Bank misrepresents (and omits facts about) the true nature, benefits, and risks of the Zelle service, functioning of which means that users are at extreme and undisclosed risk of fraud when using Zelle. Had Plaintiff been adequately informed of these risks, she would not have signed up for or used Zelle.

37.     The Bank's marketing representations about Zelle—including within its app and website—misrepresent and never disclose these risks and material facts, instead luring accountholders to sign up for and use the service with promises of ease, safety and security.

38.     These representations—which all users view during the sign-up process—are false and contain material omissions.

39.     TD Bank misrepresents the true nature, benefits and risks of the service, which burden users with an extreme and undisclosed risk of Zelle causing losses due to fraud. Plaintiff would not have used Zelle if she had been adequately informed of the risks.

40.     The Bank's misrepresentations and omissions are especially pernicious because TD Bank alone knows a crucial fact regarding Zelle transfers that occur on its accountholders' accounts:  as a matter of secret bank policy, fraud-induced Zelle transfers will almost never be reimbursed to accountholders.

41.     Indeed, upon information and belief, TD Bank maintains a secret policies whereby it refuses to reimburse fraud losses incurred via Zelle, even where its accountholders timely inform TD Bank of the fraud.

42.     It misrepresents and fails to disclose this secret policy.

43.     Further, TD's Deposit Agreement applicable to consumer accounts repeatedly promises users that, if they timely report fraud, such fraud will be fairly investigated and accountholders will not be liable for fraudulent transfers:

**Unauthorized Transfers**
Tell us AT ONCE if you believe your Card, your PIN, or both has been lost, stolen or used without your permission, or if you believe that an Electronic Funds Transfer has been made without your permission using information from your check. You could lose all the money in your Deposit Account, plus your available overdraft protection. Telephoning is the best way of keeping your possible losses down. If you notify us within two (2) Business Days after you learn of the loss or theft of your Card or PIN, you can lose no more than $50 if someone uses your Card or PIN without your permission. If you do not notify us within two (2) Business Days after you learn of the loss or theft of your Card or PIN, and we can prove we could have prevented someone from using your Card and/or PIN without your permission if you had told us, you could lose as much as $500 ($50 if you are a resident of Massachusetts and this Agreement is governed by Massachusetts law).

[…]

**Errors or Questions About Electronic Funds Transfers**
If you need information about an Electronic Funds Transfer or if you believe there is an error on your bank statement or receipt relating to an Electronic Funds Transfer, telephone the Bank immediately at 1-888-751-9000 or write to: Deposit Operations Department P.O. Box 1377 Lewiston, ME 04243-1377.

We must hear from you no later than sixty (60) Calendar Days after we sent you the FIRST statement on which the problem or error appeared…We will complete our investigation within ten (10) Business Days after we hear from you (or within twenty (20) Business Days after we hear from you if your notice relates to a transfer that occurred within thirty (30) Calendar Days after your first deposit to the Account)…We will correct any error promptly after we complete our investigation. We will send you a written explanation within three (3) Business Days after completing our investigation. You may ask for copies of the documents that we used in our investigation and we must make these available to you for inspection.

44.     These provisions are and were reasonably understood by Plaintiff to mean that Plaintiff would not be liable for electronic funds transfers effectuated by fraud.

**C.     Plaintiff's Experience**

45.     When Plaintiff signed up for Zelle she was not informed that Zelle's service had a significant "catch" and that significant monetary losses could result from signing up for the service—or that those losses almost never are reimbursed by users' banks or credit unions.

46.     For example, on February 22, 2022 a fraudster transferred $1,000 from Plaintiff's personal bank account using the Zelle service.

47.     Plaintiff is a small business owner. She owns an online boutique offering fashion apparel and cosmetic products.

48.     Plaintiff has been an accountholder with TD Bank since 2016.

49.     In February 2022, a fraudster messaged Plaintiff on Instagram purporting to offer assistance with securing grants for small businesses. The fraudulent Instagram user provided information about the purported grant and answered Plaintiff's questions professionally and timely.

50.     A few days later, the fraudster followed up with Plaintiff and prompted her to apply for the grant. Plaintiff submitted a form application and almost immediately was "approved" for the grant.

51.     Upon approval, the fraudster requested Plaintiff transfer $1,000 via Zelle as a security deposit needed to secure the grant for her small business and provided Plaintiff with Zelle contact information.

52.     After $1,000 was fraudulently transferred from Plaintiff's bank account using Zelle, the fraudster requested an additional $700 to complete the grant application process.

53.     At this point, Plaintiff determined she fell victim to fraud, demanded her money be returned, and reported the fraudulent account to Instagram. Despite Plaintiff's demand, the fraudster did not return the money and blocked Plaintiff on Instagram.

54.     Plaintiff timely informed TD Bank of the fraud, but TD Bank refused to reimburse her for the losses.

55.     Specifically, Plaintiff immediately notified TD Bank once she realized the fraud. The Zelle transaction was still pending, but nevertheless, TD Bank informed Plaintiff that there was nothing it could do to recover Plaintiff's money. Instead, TD Bank closed Plaintiff's account, opened a new one, and opened a claim investigation. Ultimately, TD Bank denied the claim and refused to reimburse Plaintiff her fraud-induced loss.

## CLASS ALLEGATIONS

56.     Pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3), Plaintiff brings this action individually and as representatives of all those similarly situated, on behalf of the below-defined Classes:

> All persons with a TD Bank account who signed up for the Zelle Service and incurred unreimbursed losses due to fraud (the "Class").

> All Florida persons with a TD Bank account who signed up for the Zelle Service and incurred unreimbursed losses due to fraud (the "Florida Subclass").

57.     Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

58.     This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

59.     **Numerosity:** The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Class is unknown to Plaintiff at this time; however, it is estimated that the Class number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

60.     **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

a)      Whether Defendant's representations and omissions about the Zelle service are false, misleading, deceptive, or likely to deceive;

b)      Whether Defendant failed to disclose the risks of using the Zelle service;

c)      Whether Plaintiff and the Class members were damaged by Defendant's conduct;

d)      Whether Defendant's actions or inactions violated the consumer protection statute invoked herein; and

e)      Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

61.     **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class. The common questions of law set forth above are numerous and substantial and stem from Defendant's uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

62.      **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were similarly injured through Defendant's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Class, were deprived of monies that rightfully belonged to them. Further, there are no defenses available to Defendant that are unique to Plaintiff.

63.      **Adequacy of Representation:** Plaintiff are adequate class representatives because they are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

64.      **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Defendant, and which would establish potentially incompatible standards of conduct for Defendant and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of

the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

**FIRST CAUSE OF ACTION**
**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. § 501.201, *et seq*.**
**(Asserted on Behalf of the Classes)**

59.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

60.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. The stated purpose of the FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

61.     Plaintiff and members of the class are "consumers" as defined by Fla. Stat. § 501.203(7).

62.     TD Bank engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8) by offering the Zelle money transfer services through its website and mobile app.

63.     As described herein, TD Bank's misrepresentations that it provides safe, secure, Zelle money transfer services through its website and mobile app constitutes an unconscionable, unfair and/or deceptive act in trade or commerce in violation of Fla. Stat. § 501.201.

64.     As described herein, TD Bank's misrepresentations that it will protect accountholders who incur fraud losses via Zelle, even where its accountholders timely inform TD Bank of the fraud, constitutes an unconscionable, unfair and/or deceptive act in trade or commerce in violation of Fla. Stat. § 501.201

65.     TD Bank's deceptive omission of the material security risks of using the Zelle service, including the risk of fraud and the risk that fraudulent losses will never be reimbursed by

TD Bank as a matter of secret policy, is a practice that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.

66.     As a direct and proximate result of TD Bank's unfair, unconscionable, and/or deceptive acts or practices, Plaintiff and members of the Class have been harmed and suffered actual damages.

### SECOND CAUSE OF ACTION
**Breach of Contract**
**(Asserted on Behalf of the Classes)**

59.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

60.     Plaintiff and members of the Class contracted with TD Bank for checking account services, as embodied in the Deposit Agreement.

61.     TD Bank breached the terms of its contract with consumers when as described herein, TD Bank failed to fairly investigate reported fraudulent transactions on the Zelle money transfer service and failed to reimburse accountholders for fraud-induced losses incurred using the Zelle service.

62.     Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

63.     Plaintiff and members of the Class have sustained monetary damages as a result of TD Bank's breaches of the contract.

### THIRD CAUSE OF ACTION
**Breach of the Covenant of Good Faith and Fair Dealing**
**(Asserted on Behalf of the Classes)**

64.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

65.     Plaintiff and members of the Class contracted with TD Bank for checking account services, as embodied in the Deposit Agreement.

66.     Florida mandates that an implied covenant of good faith and fair dealing govern every contract. For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

67.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

68.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

69.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

70.     TD Bank breached the covenant of good faith and fair dealing as explained herein.

71.     Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

72.     Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them pursuant to the Deposit Agreement.

73.     Plaintiff and members of the Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.      Certifying the proposed Classes, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B.      Declaring that Defendant's policies and practices as described herein constitute a breach of contract, and a breach of the covenant of good faith and fair dealing or unjust enrichment, and/or a violation of the Florida Deceptive and Unfair Trade Practices Act.

C.      Enjoining Defendant from the wrongful conduct as described herein;

D.      Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.      Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F.      Awarding actual and/or compensatory damages in an amount according to proof;

G.      Punitive and exemplary damages;

H.      Awarding pre-judgment interest at the maximum rate permitted by applicable law;

I.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

J.      Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this

Class Action Complaint that are so triable.

Dated:  March 30, 2022                          Respectfully Submitted,

**SHAMIS & GENTILE, P.A.**

By:     */s/ Andrew J. Shamis*
        Andrew J. Shamis, Esq.
        Florida Bar No. 101754
        ashamis@shamisgentile.com
        Edwin E. Elliott, Esq.
        Florida Bar No. 1024900
        edwine@shamisgentile.com
        14 NE 1st Avenue, Suite 705
        Miami, Florida 33132
        (t) (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Christopher Gold, Esq.
Florida Bar No. 088733
scott@edelsberglaw.com
chris@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

*Counsel for Plaintiff and Proposed Class*

Case Number: CACE-22-004614 Division: 05
Filing # 146746873 E-Filed 03/30/2022 04:42:21 PM

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

### CASE NO.

NICOLA BERRY, individually and on behalf of all
others similarly situated,

*Plaintiff,*

vs.

TD Bank, N.A.,
   *Defendant.*

_____/

CLASS ACTION

JURY TRIAL DEMANDED

### SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff/Certified Process Server of the State

TO:   TD Bank, N.A.,
      c/o United States Corporation Company- Registered Agent
      1200 Hays St
      Tallahassee, FL 32301

    Each Defendant is required to serve written defenses to the Complaint or petition on**:
Andrew Shamis, Esq, Shamis & Gentile, P.A., 14 NE 1st Ave STE 705, Miami, Florida 33132**,
within **twenty (20) days** after service of this summons on that Defendant, exclusive of the date of
service, and to file the original of the defenses with the Clerk of this Court either before service on
Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered
against that Defendant for the relief demanded in the complaint or petition.

Dated this _____ day of _      MAR 31 2022      _, 2022.

As Clerk of the Court

By: _____
              As Deputy Clerk  BRENDA D. FORMAN

**** FILED: BROWARD COUNTY, FL  Brenda D. Forman,  CLERK 3/31/2022 4:30:00 PM.****

### IN THE CIRCUIT COURT OF THE 17ᵗʰ JUDICIAL CIRCUIT IN
### AND FOR BROWARD COUNTY, FLORIDA

Case No:___C 22 - 4614____

Nicola Berry_____

Plaintiff                                    Judge Division:_____05_____

VS

T D Bank  NA_____
Defendant

### CLERK'S CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Administrative Order, No. 2020-73Civ/2020-74-UFC:
"**ADMINISTRATIVE ORDER DIRECTING CLERK OF COURTS WITH REGARD TO
DISMISSED CIVIL OR FAMILY CASES**",

**The Clerk has conducted a search for all previous existing civil cases related to
these two parties.**

**Listed below are all the aforementioned related cases:** none



Brenda D. Forman
Circuit and County Courts

By: _____LF_____

Deputy Clerk

Filing # 147232606 E-Filed 04/07/2022 10:33:59 AM

## RETURN OF SERVICE

**State of Florida**                    **County of Broward**                         **Circuit Court**

Case Number: CACE-22-004614

Plaintiff:
**NICOLA BERRY, individually and on behalf of all others similarly situated**

vs.

Defendant:
**TD BANK, N.A.**

For:
SHAMIS & GENTILE, P.A.

KDY2022011689

Received by GLOBAL PROCESS SERVICES CORP. on the 4th day of April, 2022 at 10:46 am to be served on **TD BANK, N.A. C/O UNITED STATES CORPORATION COMPANY, REGISTERED AGENT, 1201 HAYS STREET, TALLAHASSEE, FL 32301.**

I, Christopher S. Kady, do hereby affirm that on the **4th day of April, 2022** at **11:50 am, I:**

served a **CORPORATE, PARTNERSHIP, ASSOCIATION OR GOVERNMENT SERVICE** by delivering a true copy of the **SUMMONS, CLASS ACTION COMPLAINT, AND DEMAND FOR JURY TRIAL** with the date and hour of service endorsed thereon by me, to: **Sheena Black as Service Liaison** authorized to accept service, of the within named corporation, at the address of: **1201 Hays Street, Tallahassee, FL 32301** on behalf of **TD BANK, N.A.**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 35, Sex: F, Race/Skin Color: White, Height: 5'6", Weight: 155, Hair: Dark Brown, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. "Under penalties of perjury, I declare that I have read the foregoing document and that the facts in it are true" F.S. 92.525. NOTARY NOT REQUIRED PURSUANT TO FS 92.525

**Christopher S. Kady**
Process Server #237

**GLOBAL PROCESS SERVICES CORP.**
**P.O. Box 961556**
**Miami, FL 33296**
**(786) 287-0606**

Our Job Serial Number: KDY-2022011689
Ref: 22-0787

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1z

Case Number: CACE-22-004614 Division: 05
Filing # 146746873 E-Filed 03/30/2022 04:42:21 PM

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

### CASE NO.

NICOLA BERRY, individually and on behalf of all
others similarly situated,

CLASS ACTION

*Plaintiff,*

JURY TRIAL DEMANDED

vs.

TD Bank, N.A.,
*Defendant.*

Christophr  Kedy #2..7
2nd Judicial Circuit

_____/

### **SUMMONS**

THE STATE OF FLORIDA:
To Each Sheriff/Certified Process Server of the State

TO:    TD Bank, N.A.,
c/o United States Corporation Company- Registered Agent
1200 Hays St
Tallahassee, FL 32301

Each Defendant is required to serve written defenses to the Complaint or petition on**:
Andrew Shamis, Esq, Shamis & Gentile, P.A., 14 NE 1st Ave STE 705, Miami, Florida 33132,**
within **twenty (20) days** after service of this summons on that Defendant, exclusive of the date of
service, and to file the original of the defenses with the Clerk of this Court either before service on
Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered
against that Defendant for the relief demanded in the complaint or petition.

Dated this _____ day of __    MAR 31 2022    __, 2022.

As Clerk of the Court

By: _____

As Deputy Clerk BRENDA D. FORMAN